IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES W. CLARK, JR. #123588, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:24-cv-01321 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| CORE CIVIC, *et al.*, | ) MAGISTRATE JUDGE HOLMES |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

James W. Clark, Jr., an inmate of the Trousdale Turner Correctional Center ("TTCC" or "Trousdale Turner") in Hartsville, Tennessee, filed a pro se, in forma pauperis complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights. (Doc. No. 1).

The Court previously denied (without prejudice) Plaintiff's Motion for Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Doc. No. 12) because the motion was not procedurally compliant with the Federal Rules of Civil Procedures and Local Rules. (*See* Doc. No. 13).

Pending before the Court is a Second Motion for Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction (Doc. No. 19) and Third Motion to Ascertain Status of Case (Doc. No. 24). The Court will resolve these motions before moving to the initial review of the complaint pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

**I. MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff has filed a Second Motion for Temporary Restraining Order ("TRO") and Order to Show Cause for a Preliminary Injunction (Doc. No. 19).

A. <u>GOVERNING LAW</u>

A TRO movant must comply with specific procedural requirements. First, "any request for a TRO" must be made by written motion "separate from the complaint." M.D. Tenn. L.R. 65.01(a). Second, because the movant bears the burden of justifying preliminary injunctive relief on the merits, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). Third, the motion for a TRO must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b) (explaining that a motion for a TRO "must be accompanied by a separately filed affidavit or verified written complaint"). Finally, the moving party must certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); *see also* M.D. Tenn. L.R. 65.01(c) (requiring "strict compliance" with this notice provision by pro se moving parties). Plaintiff's TRO motion is procedurally compliant.

In addition to a TRO, Plaintiff also seeks a preliminary injunction. Those seeking a TRO (or preliminary injunction) must meet four requirements.[1] They must show a likelihood of success

---

[1] Some published Sixth Circuit case law stands unmistakably for the proposition that these four items are *factors* rather than *requirements,* except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a TRO alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g.*, *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). In other words, this case law stands for the proposition that the question is not whether all four of these things exist, but rather: (i) whether irreparable harm exists, and, if so, (ii) whether, considering the existence of irreparable harm and the extent to which the other three things exist, a preliminary injunction is warranted. Alas, this case law is inconsistent with at least some more recent Sixth Circuit and Supreme Court cases (including the two cases cited above) describing these as all being requirements. The Court believes that it should follow the latter line of cases[, although the outcome would be the same in this case even if the Court were to take the opposite approach and treat these four items as merely factors (except insofar as irreparable harm is *first* a requirement and, if it exists, *then* a factor).
  Notably, other courts have likewise treated the four items as requirements (prerequisites), rather than as factors. *E.g.*, *Southern Poverty Law Ctr. V. United States Dep't Homeland Sec.*, Civil Action No. 18-760 (CKK), 2020 WL 3265533, *10 (D.D.C. June 17, 2020); *Transatlantic,*

on the merits; irreparable harm in the absence of the injunction; the balance of equities favors them; and that public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 403 (6th Cir. 2022).

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "The party seeking the preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).

Plaintiffs seeking a preliminary injunction may not merely rely on unsupported allegations but rather must come forward with more than "scant evidence" to substantiate their allegations. *See, e.g., Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *McNeilly*, 684 F.3d at 614 (upholding denial of preliminary injunction when plaintiff made only a "small showing" of evidence); *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made no evidentiary showing on some elements of their claim, but instead relied on mere allegations); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, at *1 n.1 (6th Cir. Jan. 23, 1996) (affirming denial of a preliminary injunction where the district court relied on a lack of evidence to support speculative allegations); *Boulding v. Corr. Med. Servs.*, No. 06-cv-811, 2008 WL 2095390, at *1 (W.D. Mich. Feb. 11, 2008), *report and recommendation adopted*, 2008 WL 2095387 (W.D. Mich. May 15, 2008) ("Plaintiff did not marshal any evidence in support of his motion [for a preliminary injunction]. Plaintiff's unsupported allegations do not suffice."). The decision whether to grant a

---

*LLC v. Humana, Inc.*, 8:13–CV–1925–T–17TBM, 2013 WL 3958361, *1 (M.D. Fla. Aug. 1, 2013);

preliminary injunction is a matter within the discretion of the district court. *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).

B. <u>ALLEGED FACTS</u>

While Plaintiff was an inmate of the Trousdale Turner Correctional Complex, on August 1, 2024, two inmates who are members of the Bloods gang entered Plaintiff's cell with knives and took Plaintiff's commissary, lamp, and blow-dryer. Plaintiff subsequently requested a transfer to a different facility[2] and, when his request was ignored, made multiple requests to be moved into protective custody; those requests were ignored or denied.

The complaint chronicles incidents involving other inmates at Trousdale Turner, such as drug use, stabbings, prohibited cell phone use, theft, alcohol making and use, and sexual assaults. According to Plaintiff, he now has a "KOS" or Kill on Sight, which means that members of the Bloods gang will kill Plaintiff when they can. (*Id*. at 16). Plaintiff fears for his life.

On August 5, 2024, one of those same inmates hit Plaintiff with a food tray while Plaintiff "was attempting to stab" him; according to Plaintiff, he was trying to preemptively defend himself against the KOS order. (*Id*. at 13). Plaintiff's actions "made his points/security levels go up and extended his time in meeting the parole board," consequences that Plaintiff believes are the fault of Defendants. (*Id*. at 26).

On November 8, 2024, a "punitive inmate" attacked Plaintiff, breaking Plaintiff's nose and lacerating Plaintiff's forehead, requiring seven stitches. (Doc. No. 20 at 2). At the time of the attack, Plaintiff was handcuffed behind his back.

---

[2] While most of the complaint's allegations pertain to Plaintiff's concerns about his safety, the complaint also alleges that Trousdale Turner lacks many of the same programs in which Plaintiff was able to participate at his previous facility, such as vocational training and rehabilitative classes. Plaintiff alleges that the lack of available programs violates his constitutional rights. (*See* Doc. No. 1 at 9-10).

On February 20, 2025, Plaintiff was placed in protective custody. Although prison policy states that protective custody inmates are not supposed to be housed with punitive inmates and close-custody inmates, some inmates with those classifications are housed in the same pod as Plaintiff.

In June 2025, the same inmate who was involved in the August 1, 2024, and August 5, 2024 altercations with Plaintiff was moved into Plaintiff's pod. Plaintiff lives in constant fear that he will be attacked again or killed. As relief, Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

C. ANALYSIS

1. Likelihood of Success on the Merits

Plaintiff first alleges that Defendants have violated his Eighth Amendment rights "when [he] was moved to a higher security area than what [his] security is called for and denying [him] protective custody." (Doc. No. 1 at 4). Plaintiff also alleges that Defendants failed to protect him from harm by other inmates with known propensities to violence, in violation of Plaintiff's Eighth Amendment rights.[3]

The Eighth Amendment imposes on prison officials "an affirmative duty to protect inmates from violence perpetrated by other prisoners." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). The Supreme Court explained the origin of this protection in *Farmer v. Brennan*:

> Having incarcerated "persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct," having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.

---

[3] The TRO motion does not pertain to Plaintiff's allegations about the lack of certain programs at Trousdale Turner; thus, the Court will not consider Plaintiff's likelihood of success on the merits of those claims.

511 U.S. 825, 833 (1994) (alterations in original) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)). Thus, the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson*, 468 U.S. at 526-27). However, not every injury suffered by one inmate at the hands of another "translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. "[A] prison official may be held liable . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. Under this standard, a plaintiff must show that the risk of harm is sufficiently serious (an objective inquiry) and that prison officials acted with "deliberate indifference" to inmate health or safety (a subjective inquiry). *Id.* at 834.

At the pleading stage, plaintiffs can satisfy the objective component by plausibly alleging that, "absent reasonable precautions, an inmate is exposed to a substantial risk of serious harm." *Richko*, 819 F.3d at 915 (quoting *Amick v. Ohio Dep't of Rehab. & Corr.*, 521 F. App'x 354, 361 (6th Cir. 2013)). The subjective component requires plaintiffs to allege that: "(1) 'the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner,' (2) the official 'did in fact draw the inference,' and (3) the official 'then disregarded that risk.'" *Id.* (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)).

The Sixth Circuit has established that "[f]ailure to segregate violent inmates from non-violent inmates" constitutes " 'deliberate indifference' and thus . . . violate[s] the [E]ighth [A]mendment where there is a 'pervasive' risk of harm or where the victim belonged to an 'identifiable' group of prisoners for whom risk of assault is a serious problem of substantial dimension." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 815 (6th Cir. 1996) (quoting *Marsh v. Arn*, 937 F.2d 1056, 1061 (6th Cir. 1991)). For example, in *Greene v. Bowles*, the Sixth Circuit

reversed a district court's grant of summary judgment to a prison warden accused of violating the Eighth Amendment by placing Traci Greene (a medium-security inmate who was transitioning from male to female) into the same protective custody unit as Hiawatha Frezzell (a maximum-security inmate with a violent prison record ),who brutally assaulted Greene. 361 F.3d 290, 294-95 (6th Cir. 2004). The Sixth Circuit held that the district court's grant of summary judgment was inappropriate because Greene "raised an issue of fact as to [the] Warden['s] . . . knowledge of a risk to her safety because of her status as a vulnerable inmate and because of Frezzell's status as a predatory inmate." *Id.* at 295. Specifically, Greene offered evidence "from which a trier of fact could conclude that [she] was vulnerable, not just to sexual assault, but also to physical assaults from her fellow inmates," and that the warden was aware that placing Greene in proximity to "other inmates without segregation or protective measures presented a substantial risk to her safety . . ." *Id.* at 293. Greene also "presented evidence from which a trier of fact could conclude that [the] [w]arden . . . was in fact aware of the substantial risk Frezzell posed to any inmate with whom he was placed in" protective custody. *Id.* at 294.

The Western District of Tennessee applied the Sixth Circuit's failure-to-segregate standard and found Eighth Amendment violations in *Miller v. Shelby County*, 93 F. Supp. 2d 892 (W.D. Tenn. 2000). In that case, protective-custody inmate Jacob Randall Miller was attacked during recreation time at the Shelby County Correctional Center ("SCCC") by pretrial detainees Thomas Cummings and Rory Haywood, known gang members who had received frequent disciplinary reports while housed at SCCC. *Id*. at 894-95. At the time of the attack, "Miller was wearing leg irons and Haywood and Cummings were not." *Id.* at 895. Miller filed a municipal liability claim against Shelby County under 42 U.S.C. § 1983, alleging that SCCC's policy of allowing inmates to take recreation together regardless of security classification led to violation of his

Eighth Amendment rights. *Id.* at 897. The court granted summary judgment to Miller, finding "that he was incarcerated under conditions posing a substantial risk of serious harm[,]" and that "SCCC officials were aware of a substantial risk of serious harm" and "failed to take reasonable steps to avoid the known risk." *Id.* at 898, 900. Among other things, the *Miller* court found that: "gang violence on non-gang inmates was not uncommon" at SCCC; the summary judgment record was "replete with evidence that Cummings and Haywood were disruptive, had violent tendencies, and received frequent disciplinary reports"; and, "[o]n numerous occasions, Mr. Miller requested protective custody for the sole reason that he feared he would be physically attacked by gang members." *Id.* at 898, 899. The *Miller* court also found that the plaintiff had shown that SCCC "had either a policy or custom under which inmates of diverse classifications rocked[4] together," *id*. at 897, "a policy pursuant to which CJC inmates who were known to be gang members were permitted on the rock at the same time as Miller, an inmate who had expressed fear of gang violence." *Id*. The court concluded that Shelby County's policy of allowing four inmates on the rock at the same time, regardless of the classification of those inmates, was deliberately indifferent to Miller's safety in violation of the Eighth Amendment. *Id.* at 902.

Here, Plaintiff has alleged facts from which the Court reasonably could infer that he was exposed to a substantial risk of serious harm and that some Defendants knew of and disregarded that risk. These allegations, construed in Plaintiff's favor, support a reasonable inference that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm and that some Defendants each knew of and disregarded that risk. Plaintiff has plausibly alleged the existence of

---

[4] As explained by the *Miller* court, the "rock" at SCCC "is the common area in the vicinity of an inmate's cell, and includes the shower, telephone, and exercise facilities." 93 F. Supp.2d 892, 894. SCCC inmates who are in protective custody are permitted to leave their cells and be "on the 'rock'" for one hour a day. *Id*.

Trousdale Turner security policies requiring officials to separate inmates of different security statuses in housing assignment, and he is entitled to a reasonable inference that some Defendants were aware of these policies by virtue of their positions as Trousdale Turner officers and employees. *See Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." (citation omitted)). Plaintiff is likewise entitled to reasonable inferences that Defendants were aware of Trousdale Turner's recent history of inmate-on-inmate violence, Plaintiff's placement in protective custody, and the gang affiliation of the inmates who attacked Plaintiff. Plaintiff has plausibly alleged that some Defendants disregarded these substantial risks of serious harm by allowing Plaintiff's attacker and other inmates with different security statuses to be housed together and with Plaintiff. Plaintiff thus has plausibly alleged that some Defendants[5] showed deliberate indifference to his safety in violation of his constitutional rights. *Cf. Miller*, 93 F. Supp. 2d at 902.

At the pleading stage, however, the Court cannot say that Plaintiff is any more likely than Defendants to succeed on the merits of this lawsuit; at least, he has not met his heightened burden on this prong as required to justify an order commanding a change in the parties' conduct. *See Berryman v. Stephenson*, No. 2:21-cv-10925, 2022 WL 4230912, at *4 (E.D. Mich. July 12, 2022) (denying TRO motion, holding that "[a] finding that Plaintiff has 'some limited evidence' of retaliation, placed against opposing evidence supporting Defendant Farris' account, does not

---

[5] Plaintiff's claims against Defendants Hill and Christian are based on their failure to respond to Plaintiff's grievances.

indicate 'a strong likelihood of success'"). Thus, this requirement is unsatisfied. This alone requires denial of the request for a TRO, but the Court will alternatively evaluate the other requirements.

2. Irreparable Harm

The second requirement is that Plaintiff will suffer irreparable harm absent the issuance of the requested injunction.

Plaintiff alleges that his life is in danger if he is not moved out of his current pod assignment or if Defendants do not abide by facility policy to house inmates with different security statuses separately. In support of his allegation, Plaintiff points to prior attacks and thefts by fellow inmates who are known to be gang affiliated and a "Kill on Sight" order that has allegedly been taken out against Plaintiff by gang-affiliated inmates.

To justify emergency injunctive relief, Plaintiff must show that unless his motion is granted, "[he] will suffer 'actual and imminent' harm rather than harm that is speculative and unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (quoting…). "Courts have consistently held that past assaults or past injuries are insufficient to justify emergency injunctive relief." *Perry v. May*, No. 3:22 CV 688, 2023 WL 406054, at *6 (N.D. Ohio Jan. 25, 2023) (citing *Basey v. Mooneyham*, 172 F. App'x 582, 584 (5th Cir. 2006) (denying request for preliminary injunction for transfer where prisoner only alleged he had been previously assaulted by prison officials); *Brooks v. Hogan*, No. 9:14-CV-4772015 WL 10578929 (N.D.N.Y.) (denying preliminary injunction seeking transfer based on past assaults by prison staff because "a court may not rest a finding of likelihood of future harm . . .based solely on past . . . conduct") (citation omitted) (report and recommendation), *adopted in part and rejected on other grounds*, 2016 WL 1047384; *Cooper v. Bower*, No. 5:15-CV-P249-TBR 2017 WL 3389521, at *4 (W.D. Ky.) ("Plaintiff's allegation that 'staff keep assaulting' him and his conclusory statement that 'it is

obvious that my life is danger' do not constitute evidence upon which this Court can find that a transfer is warranted on this ground.")).

A decision on this factor is a close call. While Plaintiff cites past events to support his request for emergency relief, he also points to an outstanding Kill On Sight Order out against him by inmate gang members who are housed in Plaintiff's pod or have access to Plaintiff, including an inmate who previously stole Plaintiff's belongings and attacked Plaintiff. However, even if the Court determines that this requirement is satisfied, the other three requirements are unsatisfied, as explained herein.

### 3. Substantial Harm to Others & Public Interest

The last two requirements can be considered together. Where (as here), a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland,* 740 F.2d 432, 438, n.3 (6th Cir. 1984). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke,* 58 F.3d 271, 273 (6th Cir. 1995). Correctional officials are professional experts in matters of security and discipline; as such they are better suited to make decisions about security and discipline than are the courts. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979); *Nelson v. Parker*, No. 3:17-CV-01270, 2018 WL 1243443, at *4 (M.D. Tenn. Mar. 9, 2018) (citing *Griffin v. Berghuis*, 563 F. App'x 411, 417-18 (6th Cir. 2014)) (any relief that "would remove from prison officials the defense that they are generally afforded in the administration and control of the prison" would necessarily be disruptive and harmful). Moreover, "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." Bell, 441 U.S. at

548. For these reasons, a plaintiff attacking administrative decisions concerning security and discipline must meet a heavy burden.

To grant Plaintiff's request for injunctive relief (which includes a request for this Court to order the Warden to change the status quo by reassigning inmates to different housing locations within the prison) would not only be highly disruptive to the Trousdale Turner but would be contrary to the public's interest in an orderly prison system run by corrections professionals. *See Perry*, 2023 WL 406054, at *6 (finding that "[t]he public interest would not be served by this federal court interfering with the internal operation of a state prison."); *Cage v. Corr. Med. Servs., Inc.*, No. 1:09-cv-512, 2010 WL 4684000 (W.D. Mich. Nov. 10, 2010) ("The public interest would not be served by issuing a preliminary injunction of TRO, and the issuance of either form of relief would constitute unwarranted federal court interference with the State's operation of its prisons."). These two requirements thereafter are not satisfied here.

   4. Conclusion

Plaintiff has not satisfied three of the four requirements for the issuance of the requested TRO and preliminary injunction. Accordingly, the Court will deny the motion (Doc. No. 19) with prejudice to the extent it seeks an order to show cause. The Court will not ever entertain a motion to show cause why a preliminary injunction should not be issued (as Plaintiff requests) because that would improperly shift the burden regarding a preliminary injunction to the defendants.

## II. PLRA SCREENING OF THE COMPLAINT

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or

seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

A. SECTION 1983 STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

B. FACTS ALLEGED IN THE COMPLAINT

The Court set forth the allegations of the complaint earlier in this Memorandum Opinion and Order while considering Plaintiff's TRO motion.

C. ANALYSIS

The Court has already determined that Plaintiff has plausibly alleged that some Defendants showed deliberate indifference to his safety in violation of his Eighth Amendment rights. *See supra* at pp. 5-10. To be more specific, the complaint states colorable Eighth Amendment claims under Section 1983 against Defendants Jeramis Porter, Tari Crawford, Joshua Carter, Agee Smith, and John/Jane Doe ("Doe Defendants") in their individual capacities. There are no allegations in the complaint regarding such claims against Defendants Edmond Hill and Christina Christian; thus, the Eighth Amendment deliberate-indifference-to-safety claims against those Defendants will be dismissed.

Plaintiff's official-capacity claims against Porter, Crawford, Carter, Smith and the Doe Defendants, all alleged to be CoreCivic[6] employees, are essentially claims against CoreCivic itself. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Ky. v. Graham*, 473 U.S. 159, 165 (1985)) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."). These claims are redundant of Plaintiff's claims against CoreCivic and will be dismissed. *Cf. Campbell v. Cheatham Cnty. Sheriff's Dep't*, 511 F. Supp. 3d 809, 824-25 & n.12 (M.D. Tenn. 2021) (dismissing the Section 1983 claim against the sheriff's department as redundant of the claim against the county).

---

[6] The Court takes judicial notice that CoreCivic is a private entity contracted to manage TTCC. *See* https://perma.cc/96YZ-NAWG (last visited July 28, 2025); Fed. R. Evid. 201(b) (allowing notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Because it "performs the traditional state function of operating a prison," CoreCivic "acts under the color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). To state a claim against CoreCivic, the plaintiff must allege that his "'constitutional rights were violated and that a policy or custom' of [CoreCivic] 'was the moving force behind the deprivation of [his] rights." *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)).

Here, construed liberally, the complaint alleges that (1) CoreCivic maintains an informal custom, policy, or practice of (a) housing inmates of different security statuses together at Trousdale Turner, despite a facility policy not to do so and (b) failing to protect inmates from known violent inmates; (2) Defendants, in executing the informal custom, policy, or practice, acted with deliberate indifference to Plaintiff's safety; and (3) the informal custom, policy, or practice was the moving force behind Plaintiff's injuries.

The Court finds that these allegations state an Eighth Amendment claim under Section 1983 against CoreCivic for purposes of the PLRA screening. *See Oatsvall v. Core Civic*, No. 3:19-cv-00837, 2019 WL 5842929, at *6 (M.D. Tenn. Nov. 7, 2019) (finding that prisoner-plaintiff stated a colorable Section 1983 claim against CoreCivic based on allegations of facing a "pervasive, substantial, and readily apparent risk," physical and emotional harm, and plaintiff attributed the pervasive danger to a number of TTCC policies).

Next, the Court addresses Plaintiff's individual-capacity claims against any individual Defendant based on his or her response to Plaintiff's grievances or failure to respond to Plaintiff's grievances, A prisoner does not have a constitutionally protected liberty interest in an inmate grievance procedure. *See e.g., Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th

Cir. Mar. 31, 2017) (explaining that "a prisoner has no constitutional right to an effective prison grievance procedure"); *Crockett v. Davidson Cty. Sheriff's Dep't*, No. 3:19-cv-00545, 2019 WL 5592546, at *3 (M.D. Tenn. Oct. 30, 2019). An inmate who merely expresses dissatisfaction with the responses to his grievances fails to state a claim upon which relief can be granted. *See Proctor v. Applegate,* 661 F. Supp.2d 743, 766 (E.D. Mich. 2009); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (officials' failure to process inmates' grievances, without more, is not actionable under section 1983); *Greer v. DeRobertis*, 568 F. Supp. 1370, 1375 (N.D. Ill. 1983) (prison officials' failure to respond to grievance letter violates no constitutional or federal statutory right). Thus, Plaintiff's grievance-based claims against all individual Defendants must be dismissed.

Finally, the complaint also alleges that Plaintiff's constitutional rights are being violated because Trousdale Turner lacks as many programs or the same programs as other prisons. However, prisoners have no constitutionally cognizable right to participate in rehabilitative or educational programs. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989); *Kenner v. Martin*, 648 F.2d 1080, 1081 (6th Cir. 1981) (per curiam); *Carter v. Corrs. Corp. of Am.*, No. 98-6336, 1999 WL 427352, at *1 (6th Cir. June 15, 1999). Thus, as to these allegations, the complaint fails to state a Section 1983 claim upon which relief can be granted.

### III. CONCLUSION

In summary, Plaintiff's Second Motion for Temporary Restraining Order ("TRO") and Order to Show Cause for a Preliminary Injunction (Doc. No. 19) is **DENIED WITH PREJUDICE** to the extent it seeks an order to show cause.

Plaintiff's Third Motion to Ascertain Status of Case (Doc. No. 24) is **GRANTED**.

The Court has screened the prisoner complaint pursuant to the PLRA and finds as follows. Plaintiff's Eighth Amendment claims under Section 1983 against CoreCivic and Jeramis Porter, Tari Crawford, Joshua Carter, Agee Smith, and the Doe Defendants in their individual capacities shall proceed for further development.

However, the following Section 1983 claims fail to state claims upon which relief can be granted and are therefore **DISMISSED**: Plaintiff's grievance-based claims against all Defendants; Plaintiff's official-capacity claims against all Defendants (excluding CoreCivic); and Plaintiff's claims based on Trousdale Turner's lack of certain rehabilitative or educational programs. There being no remaining claims against Defendants Christina Christian and Edmond Hill in their individual capacities, those Defendants are **DISMISSED** from this action.

Accordingly, the Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each remaining Defendant (CoreCivic, Jeramis Porter, Tari Crawford, Joshua Carter, and Agee Smith). Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summonses to the U.S. Marshals Service for service on those Defendants. Fed. R. Civ. P. 4(b) and 4(c)(3).

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court.

The Court's determination that the complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for seasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE